IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Puroon, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 7811 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| Midwest Photographic Resource Center, Inc., | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Puroon, Inc. ("Puroon") has sued Defendant Midwest Photographic Resource Center, Inc. ("Midwest"), alleging claims under Illinois law for unfair business practices and unfair competition, fraud, breach of contract, unjust enrichment, tortious interference with prospective business advantage, and misappropriation of trade secrets. Midwest seeks to transfer venue to the Eastern District of Missouri under 28 U.S.C. § 1404(a). For the reasons stated herein, the Court denies Midwest's motion to transfer.

## Factual Background

Puroon is a Delaware corporation with its principal place of business in Chicago, Illinois. Compl. ¶ 4, ECF No. 1. The company was incorporated in 2012 by Hyunju Song, who is a "product designer and developer of home goods and furnishings." *Id.* at ¶ 6. Song also resides in Chicago, Illinois. *See* Compl., Ex. A.

In 2013, Song developed a product for Puroon called the "Magical Memory Book." Compl. ¶¶ 7–8. The Memory Book "combine[s] the functional aspect[s]" of a

photo album, scrapbook, and frame into a single product. *Id.* at ¶ 7. "A user may keep pictures and clippings inside the Memory Book" while selecting "favorite photographs to display on the outside" by means of an "interchangeable outside view made possible through magnetic openings." *Id.*

In November 2014, Song contacted Midwest to ask whether Midwest would be interested in manufacturing or prototyping the Memory Book for Puroon. *Id.* at ¶ 9; Daniel Decl. ¶ 4, ECF No. 15-1. Midwest is a Missouri corporation with its principal place of business in St. Peters, Missouri. Compl. ¶ 5. It has two co-owners, Michael Daniel and Cara Daniel, and it has a total of seven employees. Daniel Decl. ¶¶ 2–3. Midwest sells its products at its physical location in St. Peters, Missouri, and it also takes orders online and at tradeshows. *Id.* at ¶¶ 7–8.

Song's contact with Midwest in November 2014 consisted of telephone and e-mail communications with Midwest's Operations Manager, Tim Gau. Compl. ¶ 9, Ex. 2; Daniel Decl. ¶ 9. During these communications, Song sent Gau a Nondisclosure Agreement in connection with their negotiations over the Memory Book. Compl. ¶ 10. Gau signed the Nondisclosure Agreement and returned it to Song on Midwest's behalf. *Id.* Around this time, Gau also put Song in touch with a person named Sae Kim to discuss further details regarding the manufacture of the Memory Book. *Id.* According to Puroon, Gau represented to Song that Kim was a co-owner of Midwest. *Id.* After these communications with Gau in November 2014, Song "spent the next several months discussing the prototyping of the Memory Book over the phone and via an online messaging app" with Kim. *Id.* at ¶ 11.

In March 2015, Song and Kim arranged an in-person meeting in South Korea. *Id.* During that meeting, Kim requested payment of $1,000 in U.S. currency in exchange for ten prototypes of the Memory Book. *Id.* Song sent a wire payment in compliance with Kim's instructions. *Id.* Over the following three months, Song asked Kim several times about the status of the prototypes, but no conforming prototypes were made available to her. *Id.* at ¶ 12. Instead, Puroon alleges, Kim "'accidentally' sent" two prototypes to "an album supplier along with some of his other product samples in July 2015." *Id.* at ¶ 13. To date, Song has not received any conforming prototypes from Kim or Midwest, and her $1,000 payment has not been refunded. *Id.* at ¶ 15.

Around December 2015, Midwest began retailing a Professional Matted Display Case ("the Display Box"). *Id.* at ¶ 16. The interior of the Display Box "holds numerous photograph mats for storing pictures," while its exterior displays a selected photograph in an "inter-changeable outside view" featuring "embedded magnets." *Id.* at ¶ 17. Puroon claims that Midwest created the Display Box by copying Song's Memory Book without her permission in violation of the Nondisclosure Agreement that the parties signed in November 2014. *Id.* at ¶¶ 16, 19, 36.

## **Legal Standard**

Under 28 U.S.C. § 1404(a), a district court may transfer a civil case to another district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Transfer under § 1404(a) is appropriate when

3

"(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice." *Coffey v. Van Doren Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). In ruling on a motion to transfer venue, a court must consider the burdens that transfer would place on each party and must engage in a "case-by-case consideration of convenience and fairness." *Research Automaton, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).

## Analysis

### I. Convenience of the Parties and Witnesses

Midwest has moved to transfer this case to the Eastern District of Missouri pursuant to § 1404(a). The parties do not dispute that either the Northern District of Illinois or the Eastern District of Missouri would be a proper venue for this lawsuit. Thus, the Court begins by considering the convenience of the parties and witnesses in each of these forums. *Coffey*, 796 F.2d at 219–20.

In considering the convenience of a venue, courts consider five factors relating to the private interests of the parties and witnesses: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012) (citing *Research Automaton*, 626 F.3d at 978). The first of these private-interest factors creates a strong presumption in favor of the plaintiff's choice of forum if that forum is where the plaintiff resides. *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (internal quotation

4

marks omitted) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015). The party seeking to transfer venue bears "the burden of showing that the transferee forum is clearly more convenient." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey*, 796 F.2d at 1293). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automaton*, 626 F.3d at 979.

On balance, Midwest has not met its burden of showing that litigating this case in the Eastern District of Missouri would be "clearly more convenient" for the parties and witnesses. *Heller*, 883 F.2d at 1293. As an initial matter, Puroon's choice of forum in the Northern District of Illinois weighs heavily against transfer. This factor carries particular weight in this case because Puroon's principal place of business is located in this district. *Nat'l Presto Indus.*, 347 F.3d at 664.

The situs of material events and the relative ease of access to sources of proof are factors that also do not weigh in favor of transfer. Midwest argues otherwise, pointing to events and sources of evidence in Missouri such as Gau's communications with Song via telephone and e-mail, Gau's signing of the Nondisclosure Agreement, and Midwest's design and sale of the Display Box. Def.'s Mot. Transfer at 4–5, ECF No. 15. Each of these events and sources of evidence, however, is counterbalanced by similar events and sources of evidence located in Illinois, including Song's communications with Gau via telephone and e-mail, Song's

drafting and negotiation of the Nondisclosure Agreement, and Song's design of the Memory Box. Pl.'s Resp. at 6, ECF No. 23. Because Midwest points to nothing that tips these factors in its favor, the Court finds that each of these factors is neutral.

Next, although the convenience of the witnesses weighs slightly in favor of transfer, it is not significant enough to outweigh the strong presumption in favor of Puroon's choice of forum. The convenience of the witnesses is "often viewed as the most important factor in the transfer balance." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004). But "[t]he convenience of employee witnesses typically is not given significant weight." *Rosman Adjustment Corp. v. Bernay*, No. 12 C 8239, 2013 WL 453197, at *3 (N.D. Ill. Feb. 6, 2013); *see also St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *4 (N.D. Ill. June 1, 2006) (citing *Law Bulletin Pub., Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill.1998)). Here, Midwest names three employee witnesses who reside in the Eastern District of Missouri and who are expected to give testimony: Operations Manager Tim Gau, and co-owners Michael Daniel and Cara Daniel. Def.'s Mot. Transfer at 6. The Court is sensitive to the fact that litigating in the Northern District of Illinois will be less convenient for these witnesses than litigating in their home state. But because these witnesses are owners and employees of Midwest, this inconvenience weighs relatively little in the transfer analysis. *See, e.g.*, *Rosman*, 2013 WL 453197, at *3.

The only potential nonparty, nonemployee witnesses that Midwest identifies are "Midwest's local Missouri customers," who will testify that "Midwest's Display

Box was on the market long before Song contacted Midwest." Def.'s Mot. Transfer at 6. There are two reasons, however, why any inconvenience to these third-party witnesses also weighs only negligibly in favor of transfer. First, as the party seeking transfer, Midwest bears the burden of "clearly specify[ing] the key witnesses to be called and mak[ing] a general statement of their testimony." *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167–68 (N.D. Ill. 1995) (citing *Heller*, 883 F.2d at 1293). But rather than identifying specific third-party witnesses, Midwest broadly asserts that unidentified "local Missouri customers" will testify. Def.'s Mot. Transfer at 6. Midwest has therefore not met its burden of identifying specific third parties who would be inconvenienced if called as witnesses in this case. Moreover, any testimony from Midwest's customers would likely be duplicative of both documentary evidence bearing on the Display Box's design and sale as well as testimonial evidence from Midwest's owners and employees. As such, the likelihood that these third-party witnesses will need to give testimony about the Display Box is slim at best. The Court therefore finds that the convenience of these witnesses should not be given significant weight. *See Vandeveld*, 877 F. Supp. at 1168 ("In determining whether a particular venue is more convenient to witnesses . . . a court should look to the nature and quality of the witnesses' testimony with respect to the issues in the case.").

The final factor that the Court considers in the transfer balance is the convenience to the parties themselves. In weighing this factor, a court "considers the parties' respective residences and their ability to bear the expenses of litigating

7

in a particular forum." *Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013). Midwest argues that litigating in the Northern District of Illinois is inconvenient because Midwest is an out-of-state small business and because it would be easier for Midwest to work with its attorneys out of their St. Louis office rather than their Chicago office. Def.'s Mot. Transfer at 7. In response, Puroon points out that it would be similarly inconvenienced if this case were transferred to the Eastern District of Missouri: Puroon is a one-person small business, and it is easier for Puroon to work with its pro bono attorneys in Chicago than to retain counsel in Missouri. Pl.'s Resp. at 11. Accordingly, with regard to the convenience of the parties, transfer of this case would "merely shift[ ] inconvenience from one party to another." *Research Automaton*, 626 F.3d at 979. The Court therefore finds that this factor sits in equipoise.

In sum, Puroon's choice of forum in the district where Puroon resides creates a strong presumption against transfer. The convenience of the witnesses weighs slightly in favor of transfer, but not significantly enough to counterbalance this strong presumption. The remaining three factors—the situs of material events, the relative of access to sources of proof, and the convenience of the parties—weigh neither for nor against transfer. Thus, taken altogether, the private-interest factors do not establish that litigating this case in the Eastern District of Missouri would be clearly more convenient.

## II. Interest of Justice

Next, the Court considers whether transfer of this case to the Eastern District of Missouri would be in the interest of justice. *Coffey*, 796 F.2d at 219–20.

8

In making this consideration, courts weigh public-interest factors such as "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978 (citations omitted). "The 'interest of justice' analysis relates [ ] to the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221.

Midwest argues that transfer to the Eastern District of Missouri would lead to a speedier trial and help to relieve this Court's heavy docket. Def.'s Mot. Transfer at 8. In support, Midwest cites statistics showing that "the average time from filing a civil case to trial in the Northern District of Illinois is 38.4 months compared to 36.2 months in the Eastern District of Missouri." *Id.* Additional statistics show that judges' dockets in this district are significantly more congested than the dockets in the Eastern District of Missouri. *Id.* In response, Puroon argues that the difference between 38.4 months and 36.2 months is negligible, particularly in light of "the parties' agreed 13.5 month schedule through dispositive motions." Pl.'s Resp. at 12–13 (citing Joint Initial Status Report at 3, ECF No. 22). While Puroon's response has some merit, it does not fully rebut the statistics that Midwest cites regarding the differences in docket congestion of the respective venues. This factor therefore weighs marginally in favor of transfer.

By contrast, none of the other public-interest factors points toward transfer. This Court's familiarity with the applicable law weighs against transfer, because all

9

of Puroon's claims are brought under Illinois law and this Court frequently applies Illinois law in the diversity cases it hears. *See Coffey*, 796 F.2d at 221. Finally, the third and fourth factors—the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy—are neutral: Midwest and Puroon present parallel arguments that their respective communities have interests in the resolution of this dispute, but neither party articulates a reason why one community's interests are greater than the other's. Def.'s Mot. Transfer at 9; Pl.'s Resp. at 12. Accordingly, these last two factors weigh neither for nor against transfer.

On balance, the public-interest factors do not clearly demonstrate that transfer of this case would serve the interest of justice. As discussed above, the balance of the private-interest factors also does not lean in favor of transfer. Midwest therefore has not persuaded this Court that transfer to the Eastern District of Missouri is warranted.

## Conclusion

For the reasons stated herein, Midwest's motion to transfer [14] is denied.

**IT IS SO ORDERED.**  ENTERED    11/1/16

*[signature: John Z. Lee]*

_____
**John Z. Lee**
**United States District Judge**